UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
CHRISTY SISTO,

                              Plaintiff,

                                                    MEMORANDUM & ORDER
          -against-                                 12-CV-2258(JS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                              Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:        Phillip Howard Seelig, Esq.
                      Seelig Law Offices, LLC
                      299 Broadway, Suite 1600
                      New York, NY 10007

For Defendant:        Vincent Lipari, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, NY 11722

SEYBERT, District Judge:

          Plaintiff Christy Sisto ("Plaintiff") commenced this

action pursuant to Section 205(g) of the Social Security Act, as

amended, 42 U.S.C. § 405(g), challenging the Defendant

Commissioner of Social Security's (the "Commissioner")[1] denial of

her application for disability insurance benefits and Supplemental

Security Income ("SSI"). Presently pending before the Court are

Plaintiff's and the Commissioner's cross-motions for judgment on

_____

[1] The Clerk of the Court is directed to amend the docket to
reflect that Carolyn W. Colvin is now the Acting Commissioner of
Social Security.

the pleadings.  For the reasons explained below, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and Plaintiff's Complaint is DISMISSED.

BACKGROUND

On February 20, 2010, Plaintiff filed for disability insurance benefits and SSI, asserting that she has been disabled and, thus, unable to work, since November 30, 2007, due to major depression, anxiety, and panic disorder.  (R. 133-138, 155.)[2]  Her applications were denied on September 1, 2010.  (R. 44-51.)  On or around September 14, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. 61-62), which took place before ALJ Bruce MacDougall on April 29, 2011 (R. 21).  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert, Mr. Darren K. Flomberg.  (R. 23-40.)

The ALJ issued his decision on June 16, 2011, finding that Plaintiff is not disabled.  (R. 10-17.)  Plaintiff sought review of this decision by the Appeals Council (R. 93-132) and submitted additional evidence in support of her request (R. 349-406).  On March 21, 2012, the Appeals Counsel denied Plaintiff's request for review.  (R. 1-3.)

---

[2] "R." denotes the administrative record which was filed by the Commissioner on August 6, 2012.  (Docket Entry 11.)

The Court's review of the administrative record will proceed as follows: <u>First</u>, the Court will summarize the relevant evidence that was presented to the ALJ; <u>second</u>, the Court will review the ALJ's findings and conclusions; <u>third</u>, the Court will summarize the additional evidence submitted to the Appeals Council; and <u>finally</u>, the Court will review the Appeals Council's decision.

## I.   Evidence Presented to the ALJ

### A.   Non-Medical Evidence

Plaintiff was born on March 25, 1971. (R. 179.) She completed school through the eighth grade, attending special education classes, and obtained her GED in 1995 or 1996. (R. 156, 291.)

#### 1.   Employment History

From 1988 to 1991, Plaintiff worked as a customer service representative for a retail store. (R. 170.) Her duties as a customer service representative included data entry, filing, and faxing. (R. 172.) From 1991 to 2002, Plaintiff worked for two different employers as an administrative assistant. (R. 170.) Her duties as an administrative assistant included providing customer service over the phone, answering a switchboard, inputting data into a computer, filing, and faxing. (R. 173-74.) From 2002 to 2003, Plaintiff worked as a cashier for a check cashing business, where her responsibilities included cashing

checks, sending money transfers, and selling money orders.  (R. 170, 175.)  From 2003 to 2007, Plaintiff worked as a purchasing assistant for an eyeglass distributor, where her duties included preparing purchase orders, contacting vendors, and tracking shipments.  (R. 170, 176.)  Plaintiff was "let go" from this job on November 30, 2007, the alleged onset date of her disability, because she had taken too many sick days.  (R. 27.)  She testified that, due to her anxiety, she "would get out of bed, and go into the shower, and [she] would feel like [she] had to faint.  [She]'d feel very light-headed [and] start getting anxious, thinking about being around the people and the daily activities, and [she] couldn't handle it."  (R. 28.)

2.  Daily Activities

When Plaintiff submitted her applications in 2010, she stated that she lived with her mother and that she was no longer capable of taking care of her son, who then lived with her aunt and uncle.  (R. 162-63.)  She spent most of her time watching television, sleeping, preparing easy meals for herself (such as cereal, microwave meals, and sandwiches), and she went food shopping only once a month (which would take her all day).  (R. 163-64, 166.)  She also had difficulty with basic personal hygiene: she did not shower or brush her teeth daily, she would occasionally "pee [her]self," and she sometimes smelled.  (R. 164.)

Subsequently, at the ALJ hearing on April 29, 2011, Plaintiff testified that she lives with a friend, that her friend does the household shopping and cleaning, and that she still spends most of her time in bed watching television. (R. 29.) She has no hobbies, does not own a computer, and, although she has a driver's license, she has not driven since 2007. (R. 30.) Plaintiff testified that although she supports herself with the help of friends and family, she does not leave the house to visit them and only speaks to them on the phone. (R. 29-30.) She is also receiving welfare assistance. (R. 30.)

B.  <u>Medical Evidence</u>

Plaintiff began psychiatric treatment with Dr. Shang Liu on June 11, 2008 and has been attending monthly therapy sessions with him since that date. (R. 30-31, 160.) The record does not contain Dr. Liu's treatment notes but, instead, is limited to forms and reports that Dr. Liu completed for the purposes of Plaintiff's Social Security Administration ("SSA") and welfare applications.

The first of such records is a "Psychiatric Assessment for Determination of Employability" for Suffolk County's Department of Social Services, completed by Dr. Liu on October 22, 2009. (R. 293-94.) In the Assessment, Dr. Liu diagnosed Plaintiff with Major Depressive Disorder and Panic Disorder and stated that he had prescribed Wellbutrin and Alprazolam to treat these conditions. (R. 293.) He also noted that Plaintiff's Global

Access Functioning ("GAF") was a 56-60.[3]  (R. 293.)  The Assessment indicated that, although Plaintiff has never been hospitalized, attempted suicide, passed out, blacked out, or had episodes of decompensation as a result of her mental condition, Dr. Liu believed that Plaintiff's conditions occasionally interfered with "activities of daily living."  (R. 294.)  Further, Dr. Liu checked boxes indicating that Plaintiff was moderately limited in: understanding and remembering complex instructions, maintaining attention and concentration, interacting appropriately with others, maintaining socially appropriate behavior, maintaining basic standards of personal hygiene and grooming, using public transportation, and performing simple, low stress tasks.[4]  (R. 294.)  There was no evidence, however, that Plaintiff was limited in understanding and remembering simple instructions.  (R. 294.) Dr. Liu concluded that Plaintiff was not capable "of participating in activities such as employment, education, training or work

---

[3] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" Kohler v. Astrue, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (alteration in original) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000)).  "A GAF between 51 and 60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).'"  Id. (quoting AM. PSYCHIATRIC ASS'N at 32).

[4] The choices on the evaluation form were "no evidence of limitation," "moderately limited" or "very limited." (R. 294.)

experience" for at least one year, when a reevaluation would be necessary. (R. 294.)

Thereafter, Dr. Liu completed two forms for SSA on March 15, 2010: a "Psychiatric Evaluation" (R. 301-304) and a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" (R. 305-08). On the Psychiatric Evaluation, Dr. Liu listed the following diagnoses: generalized anxiety disorder, major depressive disorder, and a GAF of 51-60. (R. 301.) He also noted that Plaintiff continued to take Wellbutrin and Alprazolam for these conditions. (R. 301.) Dr. Liu checked boxes indicating that Plaintiff had marked difficulty in using public transportation, planning daily activities, initiating and participating in activities independent of supervision or direction, responding without fear to strangers, establishing interpersonal relationships, holding a job, and interacting and actively participating in group activities. (R. 303.) Moreover, Dr. Liu indicated that Plaintiff had deficiencies in the following areas which have resulted or would result in impaired functioning at work: independent functioning, concentration, persistence in tasks, ability to complete tasks in a timely manner, pace, and ability to assume increased mental demands associated with competitive work. (R. 303.) He further noted that, in work or work-like settings, Plaintiff, either continuously or in stressful circumstances, could not appropriately accept supervision; she

would withdraw from situations, exacerbate the signs or symptoms of her illness, miss work days, and make poor decisions; and her level of functioning would deteriorate. (R. 304.) Ultimately, Dr. Liu concluded that Plaintiff's disorder resulted in her "complete inability to function <u>independently</u> outside of [her] home," and that this impairment could be expected to last for more than one year. (R. 304 (emphasis in original).)

In the Medical Assessment completed on the same day, Dr. Liu checked boxes indicating that Plaintiff had a "good"[5] ability to follow work rules, relate to co-workers, and interact with supervisors; a "fair" ability to deal with the public, use judgment, deal with work stresses, and maintain attention/concentration; and a "poor" ability to function independently. (R. 306.) Dr. Liu reported that Plaintiff had "poor" or no ability to understand, remember, and carry out complex job instructions; a "fair" ability to understand, remember, and carry out detailed, but not complex, job instructions; and a "good" ability to understand, remember, and carry out simple job instructions. (R. 307.) Dr. Liu also noted that Plaintiff had "poor" or no ability to demonstrate reliability but was fairly able to maintain her personal appearance, behave in an emotionally

---

[5] The choices on the evaluation form were "Unlimited/Very Good," "Good," "Fair," and "Poor." (R. 306.)

stable manner, and relate predictably in social situations. (R. 307.)

On July 27, 2010, Dr. Liu submitted a report to the New York State Office of Temporary and Disability Assistance. (R. 312-18.) He indicated that Plaintiff had a GAF of 55-60 and that she was being treated for depression and general anxiety disorders which caused symptoms such as hopelessness, worthlessness, insomnia, decreased interests in pleasure, trembling, palpitations, shortness of breath, and chest discomfort. (R. 312, 314.) At this time, Plaintiff was still taking Alprazolam and Wellbutrin, and she reported no side effects. (R. 313.) Dr. Liu noted that, while under his care, Plaintiff had always been compliant with monthly appointments and medications. (R. 314.) He observed that she appeared well-groomed (R. 315, 316), and, although she seemed depressed and anxious, her speech was normal, her thoughts were goal directed, and her memory was intact (R. 315). Dr. Liu also noted, however, that Plaintiff "had poor memory due to distractibility caused by anxiety." (R. 317.) He concluded that she was unable to return to work for at least another year. (R. 316.)[6]

---

[6] After the hearing before the ALJ, but before the issuance of his decision, Dr. Liu resubmitted his July 27, 2010 report (R. 341-47) noting that all of his findings regarding Plaintiff's condition remained the same (R. 347).

In addition to Dr. Liu's reports, the ALJ had before it a "Psychiatric Review Technique" form and a "Mental Residual Functional Capacity Assessment" completed by psychologist Dr. Y. Burnstein on August 31, 2010 at the request of the SSA.[7]  (R. 319-36.)  In the Psychiatric Review Technique form, Dr. Burnstein concluded that Plaintiff had mild limitations with activities of daily living and maintaining social functioning; moderate difficulty in maintaining concentration, persistence or pace; and one or two episodes of deterioration of an extended duration.  (R. 329.)

In the Functional Capacity Assessment, Dr. Burnstein stated that Dr. Liu's opinions "[do] not reflect marked limitations from a psychological perspective that would preclude simple tasks."  (R. 335.)  He further noted that, although the evidence was "partially consistent" with Plaintiff's alleged depressive symptoms, he did not believe that those symptoms were significantly limiting.  (R. 335.)  Dr. Burnstein concluded that Plaintiff "is capable of understanding and following simple directions and sustaining concentration for simple tasks . . . [and] is able to

_____

[7] Dr. Y. Burnstein did not physically examine Plaintiff; his reports were based on his review of medical evidence made available to him.

adapt to changes as well as relate adequately to others." (R. 335.)[8]

C.  Vocational Expert Testimony

Mr. Flomberg, a vocational expert, testified at Plaintiff's ALJ hearing regarding whether she could perform any of her past work or any other jobs. (R. 33-39.) He concluded that an individual of Plaintiff's age, education, and prior work experience, with a residual functional capacity to perform light work of a simple, unskilled nature, could not perform Plaintiff's prior work as a check cashier or assistant buyer. (R. 33-34.) Mr. Flomburg further noted that if an individual with these characteristics was also limited to only occasional contact with

---

[8] He also checked off boxes indicating the following: (1) that Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; maintain a regular schedule, regular attendance, and be punctual; sustain an ordinary routine without special supervision; complete a normal workday or workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; appropriately accept instructions and criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals and make independent plans and (2) that she was "not significantly limited" in her ability to remember locations and work-like procedures; understand and carry out very short and simple instructions; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of cleanliness; be aware of and take appropriate precautions regarding normal hazards; and travel in unfamiliar places or use public transportation. (R. 333-34.)

the general public, such person would be able to perform the
following jobs: vine pruner (1,052 jobs in the tri-state area);
mail clerk (6,228 jobs in the tri-state area); and table worker
(113 jobs in the region). (R. 35-36.)

In response to questions asked by Plaintiff's attorney,
Mr. Flomberg testified that Plaintiff would not be able to perform
these jobs if she had frequent anxiety attacks that incapacitated
her for a day at a time; had difficulty maintaining attention and
concentration fifty percent of the time; was unable to handle low
stress or simple tasks for fifty percent of the time; or if she
had trouble maintaining a regular schedule. (R. 37-38.) When
asked whether Plaintiff could work these jobs if she had any
difficulty interacting with people or supervisors at all, Mr.
Flomberg responded that vine pruners generally work alone and have
minimal contact with other people, while mail clerks and table
workers have occasional interaction with people. (R. 38.)

II. Decision of the ALJ

After reviewing all of the above evidence, the ALJ issued
his decision on June 16, 2011, finding that Plaintiff is not
disabled. (R. 10-17.) The ALJ concluded that while her "medically
determinable impairments could reasonably be expected to cause the
alleged symptoms[,] . . . [Plaintiff]'s statements concerning the
intensity, persistence and limiting effects of these symptoms are
not credible to the extent they are inconsistent with [the ALJ's]

functional capacity assessment." (R. 14.) The ALJ also accorded "extra weight" to "each and every opinion" provided by Dr. Liu "given his expertise, treating relationship with the claimant and familiarity with the claimant," but accorded the most weight to his October 2009 assessment that Plaintiff was "moderately limited" in performing complex tasks, maintaining attention, sustaining an ordinary routine without supervision, interacting with the public, accepting instruction from supervisors, and responding appropriately to changes in the work setting, finding that this opinion "was most consistent with the entire medical record." (R. 15.) The ALJ gave less weight to Dr. Liu's later reports (which indicated that Plaintiff had poor or no ability to function in some of these areas) because there was no explanation by Dr. Liu for the change--her GAF remained constant and "he did not report any deterioration in the claimant's signs and symptoms." (R. 15.)

The ALJ found that, although Plaintiff was unable to perform her past work as a cashier and purchasing agent because these jobs required her to be in contact with others, her symptoms did not prevent her from performing other unskilled, light exertion work, such as employment as a vine pruner, a mail clerk, or a table worker. (R. 16.)

III. <u>Additional Evidence Submitted to the Appeals Council</u>

Subsequent to the June 16, 2011 ALJ decision, Plaintiff submitted additional reports by Dr. Liu as well as two Biopsychosocial Summaries ("BPS") prepared by Arborwecare in 2010.

A.   <u>Dr. Liu's Reports</u>

On July 12, 2011, Dr. Liu completed another "Medical Assessment of Ability to do Work Related Activities (Mental)." (R. 349-52.)  In this Assessment, Dr. Liu concluded that Plaintiff could not satisfactorily perform the following activities independently, appropriately, and effectively on a sustained basis in a regular work setting:  relate to co-workers, deal with the public, deal with work stresses, function independently, maintain attention and concentration, follow detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  (R. 349-51.)  He also concluded that she had a limited--<u>i.e.,</u> less than satisfactory--ability to perform the following activities:  follow work rules, use judgment, interact with supervisors, follow simple job instructions, and maintain her personal appearance.  (R. 349-51.)

Plaintiff also submitted to the Appeals Council three additional reports prepared by Dr. Liu, dated February 22, 2011 (R. 383), February 24, 2011 (R. 377-78), and May 17, 2011 (R. 375-76).  These reports were consistent with Dr. Liu's prior findings

and indicated that Plaintiff was unable to return to work for at least one year.  (R. 376, 378.)

B.  <u>Arborwecare's BPS Reports</u>

The first BPS Report, completed on December 3, 2010, included general intake information, which largely conforms to Plaintiff's testimony at the hearing.  The Court will only note the inconsistencies.  Plaintiff reported that she had a mental breakdown in 2007 after she lost her job and her husband left her, and she was hospitalized for five days as a result.  (R. 367.)[9] She further stated that she had no travel limitations (R. 358), was laid off from her last job due to company downsizing (R. 361, 364), and was able to vacuum, make beds, groom and use the toilet (R. 364).  Plaintiff stated that she was unable to wash dishes or clothes, sweep/mop or shop for groceries.  (R. 364.)

Plaintiff was also examined by a physician, Dr. Dominick Piacente, on this date.  Dr. Piacente diagnosed Plaintiff with recurrent severe major depression without psychotic features and deemed her "temporarily unemployable" with "significant impairment of her vocational function."  (R. 373.)  He determined that, with proper treatment, her condition could potentially stabilize within six months.  (R. 373.)

---

[9] She also indicated that she was hospitalized for psychiatric treatment again in 2009 and spent four days at Flushing Hospital.  (R. 367.)

A BPS Phase II Report was completed by Dr. Michael Gordon after examining Plaintiff on December 9, 2010. (R. 398-402.) Dr. Gordon observed that Plaintiff appeared neat and clean, her mood was depressed, her affect was normal, she was cooperative, and her thoughts were logical and of normal content. (R. 399.) Symptoms including poor concentration, insomnia, anxiety/fearfulness, forgetfulness, irritability, claustrophobia, and fatigue were noted. (R. 398-99.) According to Dr. Gordon's assessment, Plaintiff had mild difficulty following work rules and accepting supervision and had moderate difficulty dealing with the public, maintaining attention, relating to co-workers, adapting to change, and adapting to stressful situations. (R. 400.) The report states that Plaintiff's "[d]epression and anxiety impairs concentration, memory, persistence, motivation and frustration tolerance." (R. 400.) However, Plaintiff was oriented to person and place and remembered three objects after five minutes. (R. 399-400.) Dr. Gordon's diagnosis was also Major Depressive Disorder without psychotic features, her GAF was 50, and his treatment recommendation was outpatient psychotherapy and antidepressant medication. (R. 400-01.) In Dr. Gordon's opinion, Plaintiff was temporarily disabled from work but, with treatment, she would likely be able to return to full time work in three months. (R. 401.)

IV.  Decision of the Appeals Council

The Appeals Council denied Plaintiff's appeal of the ALJ's determination, stating that they "found no reason under [the] rules to review the Administrative Law Judge's decision."  (R. 1.)  Thus, the ALJ's decision is considered the final decision of the Commissioner.  (R. 1.)

DISCUSSION

Plaintiff commenced this action on May 8, 2012.  (Docket Entry 1.)  The Commissioner filed her Answer and the administrative record on August 6, 2012.  (Docket Entries 10, 11.)  On December 7, 2012, the Commissioner moved for judgment on the pleadings (Docket Entry 16), and on January 17, 2013, Plaintiff cross-moved for judgment on the pleadings.  These motions are presently before the Court.

I.  Standard of Review

In reviewing the ruling of the ALJ, this Court will not determine de novo whether Plaintiff is entitled to SSI or disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard."  Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks

and citation omitted), <u>superseded by statute on other grounds</u>, 20 C.F.R. § 404.1560(c)(2). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. <u>See</u> <u>Johnson v. Barnhart</u>, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. <u>See</u> <u>id.</u>

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." <u>See</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

## II. <u>Eligibility for Benefits</u>

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive SSI or disability benefits. <u>See</u> <u>Byam v. Barnhart</u>, 336 F.3d 172, 175 (2d Cir. 2003); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C.

§§ 423(a)(1)(A), 1381a.  A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011).  First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, the claimant must prove that she suffers from a severe impairment that significantly limits her mental or physical ability to do basic work activities.  Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must show that her impairment is equivalent to one of the impairments listed in Appendix 1 of the Regulations. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Fourth, if her impairment or its equivalent is not listed in the Appendix, the

claimant must show that she does not have the residual functional capacity to perform tasks required in his previous employment. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Boryk ex rel. Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

In the present case, the ALJ performed the above analysis, and his conclusions as to the first three steps do not appear to be in dispute. He found that Plaintiff had not been engaged in substantial gainful activity since November 30, 2007 and that her condition constituted a severe impairment that limited

her capacity to work. (R. 12.) The ALJ next determined that neither Plaintiff's impairments nor a medical equivalent was among those enumerated in Appendix 1 and then proceeded to determine whether Plaintiff retained the residual functional capacity to perform her past work. (R. 13-15.) The ALJ found that although Plaintiff was not capable of performing her past work, she had the residual functional capacity to perform simple, unskilled work with limited contact with others. (R. 14, 16.)

The Court must determine whether this final decision is supported by substantial evidence. With respect to the new evidence submitted to the Appeals Council, it is deemed part of the record and will be considered by the Court when determining if there is substantial evidence to support the Commissioner's final decision. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) ("When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.").

Here, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform substantial gainful activity because he: (1) gave more weight to Dr. Liu's October 2009 opinion than his later opinions and (2) improperly discounted Plaintiff's subjective complaints regarding the limiting effects of her

medical condition.   The Court will address these arguments
separately.

    A.   <u>Treating Physician Rule</u>

    Plaintiff argues that the ALJ improperly weighed the
evidence when he gave less weight to Dr. Liu's later opinions.
The Court disagrees.

    According to the "treating physician rule," the medical
opinions and reports of a claimant's treating physicians are to be
given "special evidentiary weight."  <u>Clark v. Comm'r of Soc. Sec.</u>,
143 F.3d 115, 118 (2d Cir. 1998).  Specifically, the regulations
state:

> Generally, we give more weight to opinions
> from your treating sources . . . . If we find
> that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ does not
accord controlling weight to the medical opinion of a treating
physician, the ALJ "must consider various 'factors' to determine
how much weight to give to the opinion."  <u>Halloran v. Barnhart</u>,
362 F.3d 28, 32 (2d Cir. 2004) (citation omitted); <u>see also</u>
<u>Schnetzler v. Astrue</u>, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008).
Such factors include:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the
> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and laboratory
> findings; (4) the physician's consistency with
> the record as a whole; and (5) whether the
> physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Halloran, 362 F.3d at 32). The Court finds that the ALJ's opinion is in accord with the treating physician rule.

First, the "ultimate finding of whether a claimant is disabled and cannot work" is reserved for the Commissioner. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."). Thus, that Dr. Liu consistently opined that Plaintiff was unable to work is not determinative and was appropriately given little weight by the ALJ.

Second, the ALJ clearly gave special evidentiary weight to Dr. Liu's assessments. He specifically noted that he was according "extra weight" to "each and every opinion provided by [Dr. Liu] given his expertise, treating relationship with the claimant and familiarity with the claimant" (R. 15), and such reliance on Dr. Liu's assessments is reflected in his opinion that Plaintiff is limited to performing "simple, unskilled work with

limited contact with others" (R. 14). Dr. Liu stated in both the October 2009 "Psychiatric Assessment" and the March 2010 "Medical Assessment" that Plaintiff had a "good"--i.e., satisfactory (see R. 305)--ability to perform simple tasks (R. 307) and a "fair"--i.e., "seriously limited but not precluded" (see R. 305)--ability to perform "detailed, but not complex" tasks (R. 307). He also noted repeatedly that Plaintiff had some difficulty relating to others and maintaining socially appropriate behavior while at work (R. 294, 303, 306) and that Plaintiff was incapable of working independently and without supervision (R. 303, 306).

Third, and finally, contrary to Plaintiff's assertion, the ALJ did not "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability" (Pl. Mot. 14 (internal quotation marks and citation omitted)), but rather appropriately discounted aspects of some of Dr. Liu's later assessments. An ALJ need not give deference to a treating source's opinion that is inconsistent with other substantial evidence. Halloran, 362 F.3d at 32. Here, the Court finds that the ALJ's decision to give less weight to Dr. Liu's later, more restrictive assessments of Plaintiff is supported by substantial evidence. Specifically, the ALJ noted that, although Dr. Liu's later assessments generally reflected that Plaintiff's mental condition was more limiting than his earlier assessments, there was nothing in Dr. Liu's reports to account for Plaintiff's allegedly

deteriorating condition--<u>i.e.</u>, Dr. Liu did not indicate that Plaintiff's condition was worsening. The ALJ's observation is supported by Plaintiff's relatively constant GAF score (<u>see</u> R. 293, 301, 314 (reflecting a GAF range from approximately 51-60), which itself reflects only a moderate limitation on Plaintiff's ability to work, <u>see</u> <u>supra</u> note 3. Further, as noted by the ALJ, some of Dr. Liu's later assessments contain blatant contradictions (<u>compare</u> R. 297 (March 2010 "Psychiatric Evaluation" indicating that Plaintiff had no difficulty in cooperating with co-workers, responding to supervisors, and responding to those in authority), <u>with</u> R. 298 (same form indicating that Plaintiff is unable to appropriately accept supervision); <u>compare</u> R. 315 (July 2010 form indicating that Plaintiff's memory was "intact"), <u>with</u> R. 317 (same form indicating that Plaintiff's memory was "poor"), and the Second Circuit has stated that it is entirely appropriate to give a treating physician's opinion less weight when it is internally inconsistent, <u>see,</u> <u>e.g.,</u> <u>Micheli v. Astrue</u>, 501 F. App'x 26, 28 (2d Cir. 2012).

Accordingly, the Court finds that the ALJ properly applied the treating physician rule and that his decision to give more weight to Dr. Liu's October 2009 assessment was supported by substantial evidence.[10]

---

[10] Because the Court finds that the ALJ's decision in this regard is supported by substantial evidence, it rejects Plaintiff's

B. __Plaintiff's Credibility__

Plaintiff also argues that the ALJ erred in finding that Plaintiff was not credible. The Court disagrees. "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," and the Court will uphold the ALJ's decision to discredit a claimant's testimony so long as the decision is supported by substantial evidence. Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (second alteration in original) (internal quotation marks and citation omitted). Here, Plaintiff's testimony regarding the limited effects of her condition was contradicted by other evidence in the record (compare R. 32 (Plaintiff testifying that the prescribed medications made her "a little sleepy"), with R. 293, 313 (Dr. Liu indicating that Plaintiff had reported no side effects of the prescribed medications); compare R. 163-64 (Plaintiff stating that she sometimes urinated on herself, did not always shower or brush her teeth, and sometimes smelled), with R. 297, 315 (Dr. Liu indicating that Plaintiff did not have difficulty with grooming and other personal hygiene)). Such contradictions constitute substantial evidence supporting the ALJ's decision to discount her testimony. See, e.g., Vargas v. Astrue, No. 10-CV-

_____

argument that the ALJ was required to further develop the record.

6306, 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011); <u>Shriver v.</u>
<u>Astrue</u>, No. 07-CV-2767, 2008 WL 4453420, at *2 (E.D.N.Y. Sept. 30,
2008).

C. <u>Consideration of Additional Evidence Submitted to the</u>
<u>Appeals Council</u>

The Court has also reviewed the new evidence submitted
to the Appeals Council and finds that it is wholly consistent with
the record before the ALJ.  In fact, the new evidence reveals
additional inconsistencies in Plaintiff's testimony.  For example,
Plaintiff testified that she was "let go" from her most recent job
because she had taken too much time off for medical reasons (R.
27); however, she informed Arborwecare that she had been laid off
due to company downsizing (R. 361, 364).  Further, Plaintiff
testified that she had never been hospitalized for psychiatric
treatment (R. 31; <u>see</u> <u>also</u> R. 294 (Dr. Liu's October 2009
Assessment, which indicates that Plaintiff had never been
hospitalized for psychiatric reasons)), whereas she reported to
Arborwecare that she was hospitalized twice for psychiatric
treatment due to a mental breakdown in 2007 (R. 367).

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion is DENIED,
the Commissioner's motion is GRANTED, and the decision of the ALJ
is hereby AFFIRMED.

The Clerk of the Court is directed to amend the docket to reflect that Carolyn W. Colvin is now the Acting Commissioner of Social Security and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 3, 2013
          Central Islip, NY